UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

GEORGE JOSEPH,                    :       CIVIL NO: 1:16-CV-01870
                                  :
            Plaintiff             :        (Judge Kane)
                                  :
      v.                          :       (Chief Magistrate Judge Schwab)
                                  :
DR. M. NAJI, *et al.,*            :
                                  :
            Defendants            :
                                  :

## REPORT AND RECOMMENDATION

## I.  Introduction.

The plaintiff, George Joseph, contends that the defendants violated his

Eighth Amendment rights as well as state law in connection with the medical care

that he received at the State Correctional Institution at Houtzdale (SCI-Houtzdale).

Joseph names six individuals as defendants.  Four of the defendants filed a motion

to dismiss the complaint.  For the following reasons, we recommend that the Court

grant in part and deny in part that motion to dismiss.  We also recommend that the

Court give Joseph leave to file an amended complaint.

## II.  Background and Procedural History.

In September of 2016, Joseph began this action by filing a complaint naming

six defendants: (1) Dr. Naji, a doctor at SCI-Houtzdale; (2) J. Pearson, the

Corrections Health Care Administrator (CHCA) at SCI-Houtzdale; (3) C. Thornley, a physician's assistant at SCI-Houtzdale; (4) Dr. Paul Noel, the Medical Director of the Bureau of Health Care Services (BHCS); (5) Eugene Ginchereau, the Assistant Medical Director of the BHCS; and (6) Dorina Varner, the Chief Grievance Officer of the Pennsylvania Department of Corrections. Joseph alleges the following facts in his complaint.

Joseph has osteoarthritis in his extremities. As a result, all of his extremities ache, and climbing stairs and writing are painful. He suffers from inflammation in his extremities especially in the morning, and it takes a while for his joints to loosen up. He had been on Neurontin[1] since 1999.

On April 17, 2015, while Joseph was at SCI-Somerset, Dr. MacPhail, a surgeon, told him that surgery would be too risky, and Dr. MacPhail ordered Joseph to continue on Neurontin. According to Joseph, Neurontin is an anti-inflammation medication, which had been working fine for him. After Joseph saw Dr. MacPhail at SCI-Somerset, another doctor—Dr. Alpert at SCI-Forest—told him that he needed permission from Dr. Noel and the regional medical director at

---

[1] "Neurontin (gabapentin) is an anti-epileptic medication, also called an anticonvulsant. Gabapentin affects chemicals and nerves in the body that are involved in the cause of seizures and some types of pain." https://www.drugs.com/neurontin.html (last visited May 8, 2017).

SCI-Fayette for the Neurontin.  On April 20, 2015, Dr. Alpert informed Joseph that Dr. Noel and the regional medical director approved the Neurontin.

Ten days after his consultation with Dr. MacPhail, Joseph arrived at SCI-Houtzdale.  At that time, Joseph was on Neurontin for severe nerve pain in his upper and lower extremities.  Upon Joseph's arrival at SCI-Houtzdale and without even seeing Joseph, Dr. Naji discontinued Joseph's Neurontin.

A week later, Joseph saw Dr. Naji and asked him why he had stopped the Neurontin when the surgeon at SCI-Somerset had just ordered him to continue on it.  Dr. Naji said that he did not care what the surgeon said and that Joseph was an addict.  He informed Joseph that he was sending him to see his specialist.

On June 8, 2015, Joseph saw Dr. Naji's specialist, a neurologist, who agreed with Dr. MacPhail that surgery was too risky and that Joseph should continue on the Neurontin.  A few days later, Joseph saw Dr. Naji, who told Joseph that he did not care what his specialist ordered and that he would not give him Neurontin. According to Joseph, he has been in pain ever since, and he is suffering due to the lack of the Neurontin.

Joseph filed numerous grievances seeking to be placed back on Neurontin. Characterizing CHCA Pearson as spiteful, miserable, and vindictive, and seeing her as the cause of all his medical issues, Joseph alleges that all of Pearson's responses to his grievances have nothing to do with the real issues raised in the

grievances. All of Pearson's grievance responses were about how he was seeking drugs as if he was an addict. Joseph contends that Pearson tried to cover up Dr. Naji's medical malpractice. Further, according to Joseph, every time he had an appointment with Dr. Naji, Pearson would arrange to have security officers in the room. He also alleges that Pearson would voice her opinion to the doctor, who would not order a medication.

In June of 2015, PA Thornley discontinued Joseph's dermatologist-ordered Vitamin E lotion, his T-Gel dandruff shampoo, his "A and D ointment," his eye drops, and his foot-fungus cream. *Doc. 1* at 11. And in November of 2015, she "instigated" Dr. Naji to discontinue his migraine medication—Fioricet.[2] *Id*. Joseph contends that surgeons and specialists placed him on these things for medical reasons. According to certain medical personnel, who, Joseph contends, will testify at trial, Thornley did these things to retaliate against him because of his criminal charges. As result of Thornley's actions, Joseph developed a severe skin problem again, his eyes burn, and he has headaches every day.

---

[2] "Fioricet contains a combination of acetaminophen, butalbital, and caffeine Acetaminophen is a pain reliever and fever reducer. Butalbital is in a group of drugs called barbiturates. It relaxes muscle contractions involved in a tension headache. Caffeine is a central nervous system stimulant. It relaxes muscle contractions in blood vessels to improve blood flow." https://www.drugs.com/fioricet.html (last visited May 8, 2017).

Joseph alleges that Dr. Ginchereau, in his responses to grievances, just agreed with whatever grievance response that Pearson had given. Instead of sending the regional medical director to SCI-Houtzdale to see what the problem was, he did nothing. Further, according to Joseph, although Chief Grievance Officer Varner should have investigated his claims against the medical personnel, she just agreed with and signed off on whatever crossed her desk, and she conspired to cover up the medical misconduct.

Joseph wrote to Dr. Noel numerous times about Dr. Naji, CHCA Pearson, and PA Thornley. Dr. Noel's responses were excuses to cover up for those defendants. According to Joseph, he has two written affidavits from Dr. Noel stating that he never gave an executive order to any medical doctor not to order Neurontin for prisoners. Joseph queries how Dr. Noel, who had approved the Neurontin, could then turn around and try to cover up this whole matter.

Joseph claims that the defendants violated his Eighth Amendment right to be free from cruel and unusual punishment. He also contends that the defendants violated Pennsylvania law and asserts that the defendants were negligent, and that they committed medical malpractice, defamation, and conspiracy. As relief, in addition to damages, Joseph seeks to have all his medications reordered and to have the medical defendants removed from their jobs.

Defendants Naji and Thornley filed an answer to the complaint.  Defendants

Ginchereau, Noel, Pearson, and Varner (collectively referred to as the

"Commonwealth Defendants"), however, filed a motion to dismiss the complaint

and a brief in support of that motion.  Joseph filed a brief in opposition.[3]  For the

following reasons, we recommend that the Court grant in part and deny in part the

motion to dismiss.


### III.  Motion to Dismiss and Pleading Standards.

In accordance with Fed.R.Civ.P. 12(b)(6), the court may dismiss a complaint

for "failure to state a claim upon which relief can be granted."  When reviewing a

motion to dismiss, "[w]e must accept all factual allegations in the complaint as

true, construe the complaint in the light favorable to the plaintiff, and ultimately

determine whether plaintiff may be entitled to relief under any reasonable reading

of the complaint." *Mayer v. Belichick*, 605 F.3d 223, 229 (3d Cir. 2010).  In

making that determination, we "consider only the complaint, exhibits attached to

the complaint, matters of public record, as well as undisputedly authentic

documents if the [plaintiff's] claims are based upon these documents." *Id.* at 230.

"A Rule 12(b)(6) motion tests the sufficiency of the complaint against the

pleading requirements of Rule 8(a)." *I.H. ex rel. D.S. v. Cumberland Valley Sch.*

---

[3]  Joseph argues in his brief that an entity called Correctional Care Solutions is
liable.  Correctional Care Solutions is not a defendant in this case.

*Dist.*, 842 F. Supp. 2d 762, 769-70 (M.D. Pa. 2012). "Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a 'short and plain statement of the claim showing that the pleader is entitled to relief.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 677-78 (2009). The statement required by Rule 8(a)(2) must give the defendant fair notice of what the plaintiff's claim is and of the grounds upon which it rests. *Erickson v. Pardus*, 551 U.S. 89, 93 (2007). Detailed factual allegations are not required, but more is required than labels, conclusions, and a formulaic recitation of the elements of a cause of action. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "In other words, a complaint must do more than allege the plaintiff's entitlement to relief." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 211 (3d Cir. 2009). "A complaint has to "show" such an entitlement with its facts." *Id.*

In considering whether a complaint fails to state a claim upon which relief can be granted, the court must accept as true all well-pleaded factual allegations in the complaint, and all reasonable inferences that can be drawn from the complaint must be construed in the light most favorable to the plaintiff. *Jordan v. Fox Rothschild, O'Brien & Frankel, Inc.,* 20 F.3d 1250, 1261 (3d Cir. 1994). But a court "need not credit a complaint's bald assertions or legal conclusions when deciding a motion to dismiss." *Morse v. Lower Merion Sch. Dist.,* 132 F.3d 902, 906 (3d Cir. 1997). Additionally, a court need not "assume that a . . . plaintiff can

prove facts that the . . . plaintiff has not alleged." *Associated Gen. Contractors of Cal. v. California State Council of Carpenters,* 459 U.S. 519, 526 (1983).

Following *Twombly* and *Iqbal,* a well-pleaded complaint must contain more than mere legal labels and conclusions. Rather, it must recite factual allegations sufficient to raise the plaintiff's claimed right to relief beyond the level of mere speculation. In practice, consideration of the legal sufficiency of a complaint entails a three-step analysis:

> First, the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.' Second, the court should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth.' Finally, 'where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.'

*Santiago v. Warminster Tp.,* 629 F.3d 121, 130 (3d Cir. 2010) (quoting *Iqbal,* 556 U.S. at 675 & 679).

A complaint filed by a *pro se* litigant is to be liberally construed and "'however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'" *Erickson,* 551 U.S. at 94 (quoting *Estelle v. Gamble,* 429 U.S. 97, 106 (1976)). Nevertheless, "pro se litigants still must allege sufficient facts in their complaints to support a claim." *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013). Thus, a well-pleaded complaint must contain more than mere legal labels and conclusions. Rather, a *pro se* complaint

must recite factual allegations that are sufficient to raise the plaintiff's claimed right to relief beyond the level of mere speculation, set forth in a "short and plain" statement of a cause of action.

## IV. Discussion.

The Commonwealth Defendants contend that the complaint fails to state a 42 U.S.C. § 1983 claim upon which relief can be granted against them.[4] Joseph brings his federal claims under 42 U.S.C. § 1983. "Section 1983 imposes civil liability upon any person who, acting under the color of state law, deprives another individual of any rights, privileges, or immunities secured by the Constitution or laws of the United States." *Shuman v. Penn Manor School Dist.,* 422 F.3d 141, 146 (3d Cir. 2005). To establish a § 1983 claim, the plaintiff must establish a deprivation of a federally protected right and that a person acting under color of state law committed this deprivation. *Woloszyn v. County of Lawrence*, 396 F.3d 314, 319 (3d Cir. 2005). Section 1983 "does not create any new substantive rights but instead provides a remedy for the violation of a federal constitutional or statutory right." *Shuman,* 422 F.3d at 146. Here, the substantive right at issue is a prisoner's Eighth Amendment right to be free from cruel and unusual punishment.

---

[4]  The Commonwealth Defendants do not address Joseph's state law claims. Thus, neither do we.

The Eighth Amendment is applicable to the States through the Fourteenth Amendment. *Estelle v. Gamble*, 429 U.S. 97, 101 (1976).

### A.  Personal Involvement.

The Commonwealth Defendants contend that the Court should dismiss the §1983 claims against them because Joseph has not alleged that they were personally involved in an alleged violation of his rights.

Liability in a 42 U.S.C. § 1983 or *Bivens* action is personal in nature, and to be liable, a defendant must have been personally involved in the wrongful conduct. In other words, defendants are "liable only for their own unconstitutional conduct." *Barkes v. First Corr. Med., Inc.*, 766 F.3d 307, 316 (3d Cir. 2014), *rev'd on other grounds sub nom. Taylor v. Barkes,* 135 S.Ct. 2042 (2015).  And so respondeat superior cannot form the basis of liability. *Evancho v. Fisher,* 423 F.3d 347, 353 (3d Cir. 2005).  Thus, a constitutional deprivation cannot be premised merely on the fact that the defendant was a prison supervisor when the incidents set forth in the complaint occurred. *Alexander v. Forr*, 297 F. App'x 102, 104-05 (3d Cir. 2008).  "Because vicarious liability is inapplicable to *Bivens* and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal,* 556 U.S.at 676.

The Third Circuit has "recognized that 'there are two theories of supervisory liability, one under which supervisors can be liable if they established and maintained a policy, practice or custom which directly caused the constitutional harm, and another under which they can be liable if they participated in violating plaintiff's rights, directed others to violate them, or, as the persons in charge, had knowledge of and acquiesced in their subordinates' violations.'" *Parkell v. Danberg*, 833 F.3d 313, 330 (3d Cir. 2016) (quoting *Santiago v. Warminster Twp.*, 629 F.3d 121, 129 n.5 (3d Cir. 2010)). "A plaintiff makes sufficient allegations of a defendant's personal involvement by describing the defendant's participation in or actual knowledge of and acquiescence in the wrongful conduct." *Chavarriaga v. New Jersey Dep't of Corr.*, 806 F.3d 210, 222 (3d Cir. 2015).

The Commonwealth Defendants contend that Joseph's allegations regarding their responses to his grievances or, in the case of Dr. Noel, his letters, regarding Dr. Naji discontinuing the Neurontin, are inadequate to show that they were personally involved in the decision to discontinue the Neurontin.

"Under the First and Fourteenth Amendments, prisoners retain a right of access to the courts." *Monroe v. Beard,* 536 F.3d 198, 205 (3d Cir. 2008). And "'[t]he filing of prison grievances is a constitutionally protected activity.'" *Winn v. Dep't of Corr.*, 340 F. App'x 757, 759 (3d Cir. 2009) (quoting *Davis v. Goord,* 320 F.3d 346, 352-53 (2d Cir.2003)). But "[i]t is well-established that inmates do not

have a constitutionally protected right to a prison grievance system." *Mitchell v. Dodrill,* 696 F.Supp.2d 454, 469 (M.D.Pa. 2010). "'When the claim underlying the administrative grievance process involves a constitutional right, the prisoner's right to petition the government for redress is the right to access the courts, which is not compromised by the prison's refusal to entertain his grievance.'" *Winn,* 340 F. App'x at 759 (quoting *Flick v. Alba,* 932 F.2d 728, 729 (8th Cir. 1991)). Thus, "[i]f the state elects to provide a grievance mechanism, violations of its procedures do not deprive prisoners of federal constitutional rights." *Spencer v. Moore*, 638 F. Supp. 315, 316 (E.D.Mo. 1986). And "'[t]he failure of a prison official to provide a favorable response to an inmate grievance is not a federal constitutional violation.'" *Okey v. Strebig*, 531 F. App'x 212, 215–16 (3d Cir. 2013) (quoting *Flanagan v. Shively,* 783 F.Supp. 922, 931–32 (M.D.Pa.1992), *aff'd,* 980 F.2d 722 (3d Cir.1992)). Further, "there is no apparent obligation for prison officials to investigate prison grievances." *Paluch v. Sec'y Pennsylvania Dep't Corr.*, 442 F. App'x 690, 695 (3d Cir. 2011).

Applying these legal tenets, the defendants cannot be liable for their actions in denying grievances and grievance appeals and for not investigating Joseph's claims. It does not appear, however, that Joseph is seeking to hold the defendants liable on those bases. Rather, we construe Joseph's claims against the

Commonwealth Defendants as Eighth Amendment claims that they were deliberately indifferent to his serious medical needs.

In order for a plaintiff to allege a viable Eighth Amendment medical claim, he must allege facts from which it can reasonably be inferred that the defendant acted with deliberate indifference to his serious medical needs. *Estelle*, 429 U.S. at 104. This is a two-part inquiry: "a plaintiff must make (1) a subjective showing that 'the defendants were deliberately indifferent to [his or her] medical needs' and (2) an objective showing that 'those needs were serious.'" *Pearson v. Prison Health Serv.*, 850 F.3d 526, 534 (3d Cir. 2017) (quoting *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999)).

Citing cases concluding that the filing of a grievance is not sufficient to show personal involvement in the alleged unlawful conduct, the Commonwealth Defendants contend that their involvement in the grievance process is inadequate to show that they were personally involved in Dr. Naji's decision to discontinue the Neurontin.

It is true that a grievance about events that happened in the past and are not ongoing is not sufficient to raise an inference that the officials or administrators who answered that grievance were involved in the alleged underlying unconstitutional conduct. *Pressley v. Beard*, 266 F. App'x 216, 218 (3d Cir. 2008) (concluding that the district court properly dismissed "[s]everal named defendants,

such as the Secretaries of the Department of Corrections or Superintendents, [who] were named only for their supervisory roles in the prison system" and "any additional defendants who were sued based on their failure to take corrective action when grievances or investigations were referred to them"); *Brooks v. Beard*, 167 F. App'x 923, 925 (3d Cir. 2006) ("Although the complaint alleges that Appellees responded inappropriately to Brooks's later-filed grievances about his medical treatment, these allegations do not establish Appellees' involvement in the treatment itself.").

But, in some circumstances, a grievance may be sufficient to put a prison official on notice of an alleged continuing violation of the plaintiff's rights and, therefore, may show actual knowledge of an alleged constitutional violation and acquiescence in the events forming the basis of a prisoner's claims. *Parkell*, 833 F.3d at 336 n.14 ("Our oft-cited holding in *Rode v. Dellarciprete,* 845 F.2d 1195, 1208 (3d Cir. 1988) that the mere <u>filing</u> of a grievance does not show actual knowledge by a supervisor is not applicable, as Phelps's letters show that he actually had reviewed the grievances." (emphasis in original)); *Diaz v. Palakovich,* 448 Fed.App'x. 211, 215 (3d Cir. 2011) (holding that summary judgment for the defendants was improper where the defendants had knowledge through the grievance process of an alleged ongoing practice of improper handling of the plaintiff's mail and the defendants failed to take corrective action); *Atkinson v.*

*Taylor,* 316 F.3d 257, 270-271 (3d Cir. 2003) (refusing to hold as a matter of law that correspondence or conversations with prison officials do not constitute sufficient evidence of actual knowledge and acquiescence).

Here, we reasonably construe the complaint as alleging that Joseph informed the Commonwealth Defendants through his grievances and letters of Dr. Naji's ongoing refusal to provide Neurontin. Given that he was complaining about an ongoing refusal, at this early stage of the proceedings and drawing all inferences in the light most favorable to Joseph, we cannot say as a matter of law that the grievances and letters did not provide the Commonwealth Defendants with knowledge of Dr. Naji's refusal to provide Neurontin. But knowledge alone is not sufficient to show that the defendants were personally involved. Rather, personal involvement is shown through knowledge and acquiescence in the wrongful conduct.

"Where a supervisor with authority over a subordinate knows that the subordinate is violating someone's rights but fails to act to stop the subordinate from doing so, the factfinder may usually infer that the supervisor 'acquiesced' in (i.e., tacitly assented to or accepted) the subordinate's conduct." *Robinson v. City of Pittsburgh*, 120 F.3d 1286, 1294 (3d Cir. 1997) (footnote omitted), *abrogated on other grounds*, *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 67 (2006). "But where actual supervisory authority is lacking, mere inaction, in most

circumstances, does not reasonably give rise to a similar inference." *Id.* And "[a]s a general matter, a person who fails to act to correct the conduct of someone over whom he or she has no supervisory authority cannot fairly be said to have 'acquiesced' in the latter's conduct." *Id.* Thus, a defendant is not "'liable under § 1983 for failing to take action to correct the behavior of an individual over whom he had no actual control' and a higher-ranked individual does not necessarily have supervisory authority over a lower-ranked employee." *Jennings-Fowler v. City of Scranton*, No. 16-1256, 2017 WL 715068, at *4 n.23 (3d Cir. Feb. 23, 2017) (quoting *Robinson*, 120 F.3d at 1294).

Joseph has not alleged that defendant Varner, the Chief Grievance Officer, had supervisory authority over Dr. Naji and his decision about whether to provide Joseph with Neurontin. And there is no reasonable basis to assume that she, as a nonmedical official, would have such authority. Thus, Joseph has not alleged personal involvement on the part of defendant Varner, and the complaint fails to state an Eighth Amendment claim upon which relief can be granted against defendant Varner.

It would be futile to allow Joseph leave to amend to attempt to state an Eighth Amendment claim upon which relief can be granted. This is so not only because he cannot show personal involvement through knowledge and acquiescence on the part of Varner, but also because as a nonmedical officer,

Varner was not deliberately indifferent to Joseph's serious medical needs by not

intervening in his medical care given that he was being treated by Dr. Naji. *See*

*Parkell*, 833 F.3d at 336 ("Although the letters from Phelps could demonstrate

Phelps's awareness of Parkell's medical complaints, they do not demonstrate

deliberate indifference, as Phelps is not medical staff." (footnote omitted) (citing

*Durmer v. O'Carroll,* 991 F.2d 64, 69 (3d Cir. 1993) (holding that non-medical

defendants not deliberately indifferent "simply because they failed to respond

directly to the medical complaints of a prisoner who was already being treated by

the prison doctor"); *Spruill v. Gillis,* 372 F.3d 218, 236 (3d Cir. 2004) ("[A]bsent a

reason to believe (or actual knowledge) that prison doctors or their assistants are

mistreating (or not treating) a prisoner, a non-medical prison official ... will not be

chargeable with the Eighth Amendment scienter requirement of deliberate

indifference."); *see also Pearson*, 850 F.3d at 540 n.4 (noting that the reasoning of

*Spruill* applies to "defendants who are not physicians but have some amount of

medical training," and concluding that "[g]iven that it is the physician with the

ultimate authority to diagnose and prescribe treatment for the prisoner, a nurse who

knows that the prisoner is under a physician's care is certainly 'justified in

believing that the prisoner is in capable hands,' *id*. so long as the nurse has no

discernable basis to question the physician's medical judgment") (quoting *Spruill,*

372 F.3d at 236).  Accordingly, we recommend that the Eighth Amendment claims against defendant Varner be dismissed with prejudice.

Whether the complaint states an Eighth Amendment claim upon which relief can be granted against defendants CHCA Pearson, Medical Director Noel, and Assistant Medical Director Ginchereau is a closer call.  Joseph has not specifically alleged that these defendants had supervisory authority of Dr. Naji or the ability to overrule his decision not to provide Neurontin.  But, as the title of these defendants' positions show, they are all involved in medical issues in some capacity.  And Joseph does allege that Pearson voiced her opinions about his care and had influence over Dr. Naji's treatment.  He also alleges that Dr. Noel had previously approved Neurontin for him.  At this early stage of the proceedings, accepting Joseph's factual allegations as true, and all drawing inferences in his favor, the complaint is sufficient to allege personal involvement on the part of defendants Pearson, Noel, and Ginchereau.  And as these defendants do not argue that the complaint fails to state and Eighth Amendment claim against them on any basis other than lack of personal involvement, we recommend that the Eighth Amendment claims against defendants Pearson, Noel, and Ginchereau not be dismissed.

**B. Conspiracy to Cover Up.**

The Commonwealth Defendants also contend that Joseph's conspiracy claim fails as a matter because Joseph has not alleged facts that reasonably suggest an agreement on concerted activity by the defendants to deprive Joseph of his Neurontin. They contend that his allegations of conspiracy are vague and conclusory.

"[C]onspiracy under § 1983 is not an independent cause of action, but a means to impute liability on third persons." *Ober v. Miller*, No. CIV.A. 1:04-CV-1669, 2007 WL 4443256, at *18 (M.D. Pa. Dec. 18, 2007), *aff'd*, 395 F. App'x 849 (3d Cir. 2010); *see also Landrigan v. City of Warwick,* 628 F.2d 736, 742 (1st Cir.1980) (stating that a § 1983 "[c]onspiracy is merely a mechanism by which to obtain the necessary state action, or to impose liability on one defendant for the acts of the others performed in pursuance of the conspiracy"(citations omitted)). "[A] §1983 conspiracy claim only arises when there has been an actual deprivation of a right." *Perano v. Twp. of Tilden,* 423 F. App'x 234, 239 (3d Cir. 2011).

"The essence of a conspiracy is an agreement." *United States v. Kelly,* 892 F.2d 255, 258 (3d Cir. 1989). "To demonstrate the existence of a conspiracy under § 1983 [or *Bivens*], 'a plaintiff must show that two or more conspirators reached an agreement to deprive him or her of a constitutional right under color of law.'" *LeBlanc v. Stedman*, 483 F. App'x 666, 670 (3d Cir. 2012) (quoting *Parkway*

*Garage, Inc. v. City of Phila.,* 5 F.3d 685, 700 (3d Cir.1993), *abrogated on other grounds by United Artists Theatre Circuit, Inc. v. Twp. of Warrington,* 316 F.3d 392 (3d Cir. 2003)). "It is not enough that the end result of the parties' independent conduct caused the plaintiff harm or even that the alleged perpetrators of the harm acted in conscious parallelism." *Perez v. Gamez*, 1:13-CV-1552, 2013 WL 6073877, at *9 (M.D. Pa. Nov. 18, 2013). Rather, the plaintiff must show that the defendants acted in concert with the specific intent to violate the plaintiff's rights. *Davis v. Fox*, 3:12-CV-1660, 2013 WL 5656125, at * 5 (M.D. Pa. Oct. 15, 2013).

Because direct evidence of a conspiracy is rarely available, the existence of a conspiracy may be inferred from the circumstances. *Capogrosso v. The Supreme Court of New Jersey*, 588 F.3d 180, 184 (3d Cir. 2009). Still, to state a conspiracy claim upon which relief can be granted, a plaintiff must allege "facts from which a conspiratorial agreement can be inferred." *Great Western Mining & Mineral Co. v. Fox Rothschild LLP,* 615 F.3d 159, 178 (3d Cir. 2010). "To properly plead such an agreement, 'a bare assertion of conspiracy will not suffice.'" *Id.* (quoting *Twombly*, 550 U.S. at 556).

Here, although Joseph alleges that the defendants conspired to cover up Dr. Naji's purported misconduct by refusing to continue the Neurontin, he has not pleaded facts to support a plausible conspiracy claim. He alleges that the

defendants engaged in a conspiracy, but he does not allege facts from which it can reasonably be inferred that the defendants reached an agreement, or a meeting of the minds, to deprive him of his constitutional rights. He has not alleged facts from which it can be inferred that the defendants conferred about their actions or agreed to violated his rights.

Moreover, Joseph has not alleged facts from which the Court can reasonably infer that the alleged conspiracy to cover up violated his constitutional rights. "A cover-up, without more, cannot be the basis of a conspiracy claim under § 1983." *Epifan v. Roman*, No. 3:11-CV-02591-FLW, 2014 WL 4828606, at *7 (D.N.J. Sept. 29, 2014). Rather, a plaintiff must show how the purported cover up violated his constitutional rights. *Id.* at *6; *see also Bush v. City of Philadelphia*, No. CIV. A. 98-0994, 1999 WL 554585, at *4 (E.D. Pa. July 16, 1999) ("Cases decided in this court and elsewhere show that conspiracy by police officers to file false reports and otherwise cover up wrongdoing by fellow officers is not in and of itself a constitutional violation. It provides the basis for a § 1983 action only if it results in some constitutional harm to the plaintiff."). Although Joseph alleges a cover up, he has not alleged facts to support that conclusion.

In sum, because Joseph has not alleged facts from which it can reasonably be inferred that the defendants reached an agreement to violate his rights or that their purported cover up actually violated his rights, the complaint fails to state a

conspiracy claim upon which relief can be granted. We thus recommend that the conspiracy claim be dismissed. But given the liberal policy in favor of allowing amendment, we recommend that Joseph be given leave to amend to attempt, if appropriate, to state a conspiracy claim upon which relief can be granted.

## V. Recommendations.

Based on the foregoing, we recommend that the Court grant in part and deny in part the Commonwealth Defendants' motion (doc. 15) to dismiss the complaint. More specifically, we recommend that the Court dismiss the conspiracy claim against the Commonwealth Defendants. We also recommend that the Court dismiss the Eighth Amendment claim against defendant Varner. We recommend that the Court otherwise deny the motion to dismiss. Finally, we recommend that Joseph be given leave to file an amended complaint, if appropriate, to attempt to state a conspiracy claim upon which relief can be granted. [5]

---

[5] Any amended complaint must be titled as an amended complaint and must contain the docket number of this case. Any amended complaint must be complete in all respects; it must be a new pleading which stands by itself as an adequate complaint without reference to the complaint already filed. Any amended complaint will completely replace the original complaint. If an amended complaint is filed, the original complaint will have no role in the future litigation of this case. Any amended complaint must also comply with the pleading requirements of the Federal Rules of Civil Procedure.

The Parties are further placed on notice that pursuant to Local Rule 72.3:

Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Submitted this 16th day of May, 2017.


*S/Susan E. Schwab*
Susan E. Schwab
Chief United States Magistrate Judge